UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Christopher Mansoori,<br><br>    *Plaintiff*,<br><br>v.<br><br>C.O. Squires, Lt. Holmes, Lt. Delitz,<br>C.O. Mintah, and Superintendent Queen,<br><br>    *Defendants*. | No. 21 CV 5881<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

    Christopher Mansoori, a pretrial detainee, sued various Cook County Jail personnel, including Correctional Officer Mintah and Lieutenant Holmes, alleging that they denied him access to indoor and outdoor recreation in violation of 42 U.S.C. § 1983.[1] Because Mansoori was incarcerated when he filed suit, he needed to comply with the Prison Litigation Reform Act ("PLRA"), which demands prisoners exhaust their administrative remedies prior to suing in federal court. 42 U.S.C. § 1997e(a). Mintah and Holmes have moved for summary judgment arguing Mansoori did not abide by this requirement. The motion is granted as to Mintah, but largely denied as to Holmes.

**BACKGROUND**

    "On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). Any party, including a pro se litigant, who fails to comply with Local Rule 56.1 does so at their own peril. *Wilson v. Kautex, Inc.*, 371 F. App'x. 663, 664 (7th Cir. 2010). Here, the parties have substantially complied with Local Rule 56.1. [Dkts. 80, 93, 95, 101.] The Court views the facts and draw all reasonable inferences in favor of Mansoori,

---

[1]     The other defendants (who have not moved for summary judgment) are Correctional Officer Squires, Lieutenant Delitz, and Superintendent Queen.

1

the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *WEC 98C-3 LLC v. SFA Holdings Inc.*, 99 F.4th 961, 969 (7th Cir. 2024).

From October 7, 2019, through October 25, 2021, Mansoori was in custody at the Cook County Department of Corrections ("CCDOC"). [Dkt. 93 ¶ 2.] The CCDOC maintains an Inmate Grievance Procedure ("IGP"), which informs inmates as to how to exhaust their administrative remedies. The IGP instructs inmates that they must file their grievances within 15 days of an incident, and then appeal any adverse ruling within 15 days. [*Id.* ¶ 18.] The IGP also requires the inmate to "provide the specific date, location, and time of incident, problem, or event that you are grieving" in the grievance. [Dkt. 80-9 at 32.][2]

While in custody, Mansoori was housed in various divisions within CCDOC, and he filed five grievances. [*Id.* ¶¶ 9, 11.] His overarching complaint for each of the grievances—all of which were timely filed and appealed—is that he was not given sufficient opportunity (both inside and outside) to exercise, which harmed his health. [*See* Dkt. 80-6.] The contents of Mansoori's grievances contained the following:

| Date of Grievance | Grieved Timeline | Mansoori's Living Unit | CCDOC Personnel Named in Grievance | CCDOC Personnel who Responded to Grievance |
|---|---|---|---|---|
| 12/7/2019 | 11/24/2019 – 12/7/2019 | Div. 6 1N | Ms. Squires; Sgt. Winfield | Illegible |
| 1/17/2021 | 1/3/2021 – 1/17/2021 | Div. 4 J1 | John Doe Staff; C.O. Dominguez | Illegible |
| 6/23/2021 | 6/19/2021 | Div. 4 M2 | Superintendent Queen; Sgt. Danbrowski | Lt. Holmes |
| 7/18/2021 | 7/4/2021 – 7/18/2021 | Div. 6 2K | "Everyone" | Lt. Holmes |
| 10/25/2021 | 10/25/2021 | Div. 6 2K | Lt. Delitz | Lt. Holmes |

---

[2] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

2

Based on these grievances, Mansoori filed this suit in November 2021. [Dkt. 1.] As in his grievances, he alleges there were "large gaps" of time when he was not provided proper recreation at CCDOC, listing several incidents in chronological order. [Dkt. 1 at 10.] Mansoori alleges that:

- From October 31, 2019, through December 31, 2019, he was housed in Division 6, Tier 1N, and that he did not receive any recreation time because Squires unilaterally decided it was "too cold." [*Id.*]

- From March 4, 2020, through May 1, 2020, he was housed in Division 6, Tier 1K, and various other locations in Division 6, and that Holmes, who oversaw Division 6 recreation during this time, refused to provide any recreation. [*Id.*]

- From November 5, 2020, through March 4, 2021, he was primarily housed in Division 4, where Delitz refused to provide recreation. [*Id.* at 11.]

- From March 5, 2021, through May 13, 2021, he was housed in Division 6, Tier 1H, where Mintah refused to provide recreation. [*Id.*]

- From May 13, 2021, through June 21, 2021, he was housed in Division 4. Queen and an unnamed sergeant refused recreation until June 9 for the Division, but Mansoori was denied recreation entirely because he did not have a COVID-19 vaccine. [*Id.* at 11-12.]

- From June 21, 2021, through July 18, 2021, he was housed in Division 6, Tier K2, where Mansoori alleges Holmes only allowed access to the Tier's dayroom. [*Id.* at 12.]

- From July 20, 2021, through September 2, 2021, he was housed in Division 6, Tier 2K, where Delitz and Holmes refused to provide any form of recreation. [*Id.*]

- From September 3, 2021, through October 25, 2021, he was housed in Division 6, Tier 2R, where Delitz and Holmes denied recreation time. [*Id.*]

Mintah and Holmes now move for summary judgment, arguing Mansoori did not exhaust his administrative remedies as to them because the grievances Mansoori filed failed to put CCDOC on notice of their alleged misconduct. [Dkt. 81.]

ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

The PLRA requires inmates to exhaust their administrative remedies before initiating a federal civil rights lawsuit. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022) ("a suit filed before the prisoner has exhausted these remedies must be dismissed") (cleaned up). Accordingly, if a correctional facility has an internal administrative grievance system through which an inmate can seek to correct a problem, the inmate must utilize that system before filing a claim in federal court. *See Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (administrative exhaustion is required to "give the prison an opportunity to address the problem before burdensome litigation is filed.") The burden of proof is on the defendant to demonstrate the prisoner failed to exhaust his administrative remedies. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

The primary purpose of the grievance system is to put prison officials on notice of an issue so that it can potentially be resolved prior to a lawsuit. *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (the exhaustion requirement of the PLRA "affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case"); *see also Rodriguez v. Judkins*, 2020 WL 6273480, at *5 (N.D. Ill. Oct. 26, 2020) ("When a prisoner does not name the parties involved or describe the conduct about which he is complaining, this prevents the prison from addressing complaints prior to suit, which is one of the benefits of exhaustion.")

To satisfy exhaustion, however, a grievance need not necessarily name a prison official by name. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("that Maddox didn't specifically name the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement.") Indeed, the Seventh Circuit has made clear that where "prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Id.*; *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) (explaining that a

4

procedural shortcoming in a grievance "amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming."); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (same); *see also Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")

The background facts discussed above combined with these legal principles makes resolution of the exhaustion question straightforward. Regarding Mintah, Mansoori's grievances—even when read together—failed to put the CCDOC on notice of the allegations at issue here related to Mintah. As alleged in the complaint, Mintah only oversaw Mansoori's recreation from March 5, 2021, through May 13, 2021, when Mansoori lived in Division 6, Tier 1H. [Dkt. 1 at 11.] Even generously construed, none of Mansoori's grievances cover this timeframe, nor do they mention Mintah[3] or Division 6. [*See supra* at 2; Dkt. 80-6.]

To be sure, Mansoori filed a series of grievances related to his lack of recreation in 2021. But the first two grievances filed that year related to recreational needs in Division 4 in January 2021 (before Mintah controlled Mansoori's recreation) and later in June 2021 (after Mansoori left Mintah's unit). And with respect to this latter grievance, Mansoori's complaint was specific—he was denied recreation because of his vaccination status. [Dkt. 80-6 at 6.] The two other grievances from 2021 related to Division 6, but they were not filed until July 2021 (a grievance as to "everybody") and then October 2021. Neither targets an alleged failure by Mintah when she oversaw Mansoori in March, April and May 2021, so prison officials were not put on notice of nor given an opportunity to address Mansoori's concerns regarding Mintah (nor could they, as grievances must be filed within 15 days).

In so ruling, the Court is mindful that inmates "need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley*, 729 F.3d 645, at 650. While the Court agrees it was unnecessary for Mansoori to repeatedly grieve every two weeks about the lack of recreation in a specific living unit (Division, even), Mansoori did not grieve at all about his lack of recreation under Mintah's watch. CCDOC was thus unaware of any alleged wrongdoing with respect to Division 6 and Mintah, and the Court finds Mansoori's subsequent grievances too attenuated from his two-month stint in Division 6, Tier 1H.

The same analysis applies to some of Mansoori's allegations against Holmes. Mansoori alleges that from March 4, 2020, through May 1, 2020, he was housed in

---

[3] To be clear, as discussed elsewhere, the fact that Mansoori did not specifically name Mintah is not fatal because specific names might very well be unnecessary when the relevant officer can be identified by other ways and circumstances. *Maddox*, 655 F.3d 709, at 722.

5

Division 6, Tier 1K (and elsewhere), and that Holmes, who oversaw Division 6 recreation during this time, refused to provide any recreation. Mansoori did not file a single grievance in 2020, so CCDOC could not have responded to any allegations of misconduct during that period. Summary judgment is therefore appropriate. *King v. Dart*, 63 F. 4th 602, 608 (7th Cir. 2023).

The same is not true as to Mansoori's remaining claims against Holmes, however. While Defendants are correct that Mansoori did not name Holmes in the substance of any grievance, the failure to specifically name Holmes is not dispositive so long as the jail has sufficient notice. *Maddox*, 655 F.3d 709, at 722. That the CCDOC was on notice here is self-evident not only because it substantively responded to each of Mansoori's final three grievances, *id.*, but because Holmes himself responded to each of the grievances. Mansoori's grievances all note where within CCDOC he was living at the time of his filing, and if, as Mansoori alleges, Holmes was responsible for the recreational regimen of these tiers, then CCDOC knew Holmes was implicated. *See Mansoori v. Thomas*, No. 16-cv-1634, Dkt. 72 at 5 ("CCDOC cannot seriously suggest that it did not understand the nature of Mansoori's grievances because he did not name" defendant where Mansoori's grievance alleged misconduct that necessarily implicated defendant.) The Court need not belabor the point. Mansoori grieved conduct that was allegedly within Holmes's control. Presumably because of this control, the CCDOC had Holmes respond to the grievances on the merits. Mansoori timely appealed Holmes's denials, so Mansoori exhausted his administrative remedies.

## CONCLUSION

For the reasons stated herein, Mintah's motion for summary judgment is granted and she will be dismissed from the case. As to Holmes, the motion is granted in part and denied in part. Mansoori's claims as to Holmes may proceed except as to the time period of March 4, 2020, through May 1, 2020.

Enter: 21 CV 5881
Date: August 2, 2024

Lindsay C. Jenkins
United States District Judge

6